UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSHANDA ROBINSON,

        Plaintiff,                    CIVIL ACTION NO. 17-cv-12118

        v.                             DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Roshanda Robinson seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 11). Plaintiff has also filed a Response to Defendant's Motion for Summary Judgment. (Docket no. 12.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

### I.    RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 10) be **GRANTED IN PART** and Defendant's Motion for Summary Judgment (docket no. 11) be **DENIED**. It is further recommended that this matter be remanded

for further consideration of the effect of Plaintiff's numerous and frequent medical appointments on her absenteeism and her ability to perform substantial gainful activity.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 29, 2014, alleging that she has been disabled since August 1, 2014, due to systemic lupus and immune thrombocytopenia (a low platelet count). (TR 13, 122-28, 134-35, 176.) The Social Security Administration denied Plaintiff's claims on January 12, 2015, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ). (TR 64-75, 82-83.) On April 25, 2016, Plaintiff appeared with a representative and testified at a hearing before ALJ Patricia S. McKay. (TR 29-63.) The ALJ subsequently issued an unfavorable decision on July 7, 2016, and the Appeals Council declined to review the ALJ's decision. (TR 1-5, 13-23.) Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff sets forth the procedural history of this matter and provides a brief "Statement of Facts," which primarily consists of a summary of the ALJ's decision. (Docket no. 10 at 7, 9-10.) Defendant (docket no. 11 at 4-10) and the ALJ (TR 18-20, 22) have set forth factual summaries of Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 1, 2014, and that Plaintiff suffered from the following severe impairments: chronic joint pain due to history of lupus, history of immune thrombocytopenia, hypertension with grade II diastolic dysfunction and hypertensive retinopathy, restrictive lung disease/asthma, obesity with obstructive sleep apnea, and an adjustment disorder with mixed anxiety and depression. (TR 15.) Additionally, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 16-17.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she: is limited to occasional climbing of stairs, crouching, crawling, kneeling, stooping, and bending; must avoid workplace hazards such as dangerous, moving machinery and unprotected heights (no climbing of ladders, ropes, or scaffolding; is limited to frequent grasping and fingering with the upper extremities; must avoid exposure to cold temperatures; and, is restricted to low-stress work, which is work that is self-paced and not at a production rate or in team/tandem with coworkers.

(TR 17-21.) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 21-22.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from August 1, 2014, through the date of the decision. (TR 13, 22-23.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining

3

whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material

evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four for a rehearing and reconsideration or for an award of benefits because the ALJ erred by failing to (1) consider the extent of Plaintiff's inability to avoid excessive workplace absenteeism; (2) consider Plaintiff's narcotic pain medication; and (3) elicit vocational evidence sufficient to carry Defendant's burden at step five of the sequential evaluation process. (Docket no. 10 at 4, 11-22.)

> 1. *The ALJ's Consideration of Plaintiff's Inability to Avoid Excessive Workplace Absenteeism*

Plaintiff asserts that between the alleged onset date of August 1, 2014, and March 7, 2016, she attended 88 scheduled medical appointments and required emergency or unscheduled medical attention on four occasions, all of which were medically necessary and related to her instant disability claim. (Docket no. 10 at 13-14.) Therefore, Plaintiff asserts, had she been working during this 584-day period, she would have been absent from work 92 total days, or once a week. (*Id.* at 15.) Plaintiff points out that at the administrative hearing, the VE testified that absenteeism twice a month on a regular or reoccurring basis would be work preclusive. (*Id.* (citing TR 59).) Plaintiff expounds that her absenteeism would have occurred twice as often as

6

the work-preclusive rate of absenteeism assessed by the VE. (*Id*.) Plaintiff argues that the ALJ's failure to consider this issue renders her final decision unsupported by substantial evidence. (*Id*.)

Plaintiff relies on the decision of a court in this district to support her argument: *Griffin v. Comm'r of Soc. Sec.*, No. 2:15-cv-13715, 2017 WL 991006 (E.D. Mich. Mar. 15, 2017) (Battani, J.), which aptly recited the law regarding this issue:

> According to Social Security Ruling 96-8p, an ALJ assesses a claimant's residual functional capacity ("RFC"), or the claimant's ability to perform "sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." In making this determination, the Commissioner must take into consideration "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." Absenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded.

*Id*. at *2 (citing *Harrison v. Comm'r of Soc. Sec.*, No. 14-CV-11983, 2016 WL 759379, at *6 (E.D. Mich. Feb 26, 2016); *Hartman v. Colvin*, 954 F. Supp. 2d 618, 626 (W.D. Ky. 2013); *Robinson v. Astrue*, No. 1:10-CV-689, 2011 WL 6217436, at *6-7 (S.D. Ohio Dec. 14, 2011).

In *Griffin*, the plaintiff produced a table of the dates and durations of her medical treatments, which reflected that she would have been absent from work a total of 51 days over a fourteen-month period. *Id*. at *2. The court acknowledged that the medical treatments were relevant to the plaintiff's allegedly disabling conditions. *Id*. at *3. The court then noted that there was no objective record evidence regarding the length of the plaintiff's treatments, but in light of the lack of contradictory evidence and the lack of discussion by the ALJ regarding the plaintiff's absenteeism, the court concluded that it was unable to find that the ALJ's decision was

supported by substantial evidence. *Id*. The court therefore remanded the matter for further consideration. *Id*.

Here, like the plaintiff in *Griffin*, Plaintiff has produced a list of the dates of each of her 88 scheduled medical appointments and a separate list of her emergency room visits, with corresponding citations to the medical record. (*See* docket no. 10 at 13-14.) An independent review of the record confirms, for the most part, Plaintiff's assertion that the appointments were medically necessary and relevant to her claims. Notably, Defendant does not contest this assertion.

Defendant does, however, argue that Plaintiff has failed to carry her burden of proving that her appointments would have been disabling because she has offered no evidence that each appointment would have required her to take a full day off of work or that she made any attempt to schedule her appointments in such a manner to avoid work absences. (Docket no. 11 at 11.) Defendant further argues that no medical opinion in the record indicates that Plaintiff's medical appointments would be disabling. (*Id*. at 11-12.) In response, Plaintiff argues that Defendant's definition of "absence" as a "full day off" is an extreme interpretation of a word with plain meaning, and there is no indication that the VE followed Defendant's definition of "absence" when she testified at the administrative hearing. (Docket no. 12 at 3.) Plaintiff also responds that the burden imposed on Plaintiff by Defendant, that she must prove that she was unable to schedule her appointments outside of normal work hours, is easily resolved by a review of the websites of her healthcare facilities, which show that they are closed on evenings and weekends. (*Id*.)

Indeed, Plaintiff has presented no objective or subjective evidence regarding the length of her medical appointments, but Defendant has provided no authority to support her assertions that

8

only full-day absences are relevant when considering absenteeism or that a disability claimant has a duty to schedule appointments in such a manner to minimize absenteeism. Nonetheless, the circumstances in this case are analogous to those in *Griffin*: Plaintiff has provided evidence that she would have been absent from work 92 times in a 584-day period due to claim-related medical appointments; there is a lack of contradictory evidence or authority on the issue; and the ALJ's decision is completely devoid of any discussion regarding the effect of Plaintiff's numerous and frequent medical appointments on her absenteeism and her ability to perform substantial gainful activity.[1] Accordingly, like the court in *Griffin*, this Court is unable to determine whether the ALJ's decision is supported by substantial evidence, and remand for further consideration of Plaintiff's absenteeism is warranted.

## 2. *The ALJ's Consideration of Plaintiff's Narcotic Pain Medication*

Plaintiff also argues that the ALJ failed to properly consider the side effects and vocational impact of Plaintiff's narcotic pain medication. (Docket no. 10 at 16-19.) Plaintiff asserts that she was prescribed and took the opioid narcotic pain medications Norco and Tylenol #3 during the alleged disability period, from which she experienced side effects like fatigue, headaches, drowsiness, and dizziness. (*Id*. at 16; TR 155.) She also took Motrin, Prednisone, and Plaquenil for pain, which caused her to experience headaches, stomach pain, blurred vision, joint pain, and fatigue. (TR 44, 155.)

"The Sixth Circuit has held that the ALJ must evaluate '[t]he type, dosage, effectiveness, and side effects of any medication' as part of the process of determining the extent to which side effects impair a claimant's capacity to work." *Morin v. Comm'r of Soc. Sec.*, 259 F. Supp. 3d

---

[1] Also absent from the ALJ's decision is any discussion of the effect of Plaintiff's good and bad days on her absenteeism. This is despite the ALJ's statement to the VE at the administrative hearing that the "hypothetical person is *likely* to be absent at least twice a month on a regular basis" given Plaintiff's testimony that she has three to four bad days a week. (*See* TR 59 (emphasis added).)

678, 683 (E.D. Mich. 2017) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi))). "Further, hypothetical questions to vocational experts must account for medication side effects." *Id*. (citing *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009)).

 Plaintiff is correct that the ALJ did not explicitly discuss the medications that Plaintiff took to relieve her pain. But "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)). Moreover, the ALJ did explicitly consider the side effects of Plaintiff's medications, and she incorporated the limitations from those side effects into Plaintiff's RFC. For example, the ALJ accounted for Plaintiff's fatigue and use of a cane due to dizziness by limiting Plaintiff to sedentary work (TR 18, 19), and the VE testified that Plaintiff's use of a cane wouldn't affect jobs at the sedentary level (TR 58). Additionally, the ALJ accounted for Plaintiff's headaches by restricting Plaintiff's RFC to low-stress work. (TR 19.) The ALJ also acknowledged and discounted Plaintiff's claims of blurry vision on the bases that the medical records show normal vision and that Plaintiff hadn't received any treatment related to blurry vision. (TR 19.) Nevertheless, the ALJ limited Plaintiff's RFC so that she must avoid workplace hazards such as dangerous, moving machinery and unprotected heights. (TR 19.)

 Here, the ALJ incorporated the side effects of Plaintiff's medications into Plaintiff's RFC and presented those limitations to the VE in her hypothetical questions, as she was required to do. Accordingly, Plaintiff's Motion should be denied in this regard.

### 3. The ALJ's Step Five Determination

Plaintiff also challenges the ALJ's determination at step five of the sequential evaluation process that there are significant numbers of jobs existing in the national economy that Plaintiff can perform. Specifically, Plaintiff challenges the types of jobs that the ALJ and the VE identified (surveillance system monitor and inspector) as inconsistent with the fact that Plaintiff takes narcotic pain medication. (Docket no. 16 at 16-19.) And Plaintiff challenges the number of jobs cited by the ALJ and the VE, arguing that the "job incidence data obtained by the ALJ did not satisfy the statutory or regulatory definition of 'significant numbers in the national economy.'" (*Id*. at 19-21.)

Given that the ALJ's assessment of Plaintiff's RFC and the hypothetical questions to the VE will potentially change upon remand after proper consideration of Plaintiff's absenteeism, and in the interest of judicial economy, Plaintiff's claims of error in this regard will not be addressed at this juncture.

## VI. CONCLUSION

For the reasons stated herein, the court should **GRANT IN PART** Plaintiff's Motion for Summary Judgment (docket no. 10), **DENY** Defendant's Motion for Summary Judgment (docket no. 11), and remand this matter for further consideration of the effect of Plaintiff's numerous and frequent medical appointments on her absenteeism and her ability to perform substantial gainful activity.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided

...
...

for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 12, 2018                    s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: July 12, 2018                    s/ Leanne Hosking
                                        Case Manager